59 F.3d 175
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Gary L. JOVANOVICH; Frank R. Lapena, Plaintiffs-Appellants,
v.
Ron ANGELONE, Defendant-Appellee.
 No. 94-15015.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1995.
Decided June 26, 1995.
 
 Before: SCHROEDER, BEEZER, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Nevada state prisoners, Gary L. Jovanovich (no longer incarcerated) and Frank LaPena, appeal pro se the district court's summary judgment in favor of defendant prison officials in the prisoners' Sec. 1983 action alleging that their rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Secs. 201 et seq., were violated because they were not paid minimum wage for their work as inmate law clerks at Ely State Prison ("ESP"). Appellants argue that because they were (1) employed as inmate law clerks pursuant to the State's constitutional obligation to provide inmates with reasonable access to the legal system and (2) employed as inmate law clerks under a statutory scheme that designates inmate work as employment, the district court erred in finding that appellants were not employees within the meaning of the FLSA and entering summary judgment for the State. This court's holdings in Hale v. Arizona, 993 F.2d 1387 (9th Cir.) (en banc), cert. denied, 114 S.Ct. 386 (1993), and Morgan v. MacDonald, 41 F.3d 1291 (9th Cir. 1994) (involving an inmate in Nevada's ESP), petition for cert. filed (U.S. Apr. 21, 1995) (No. 94-9063-CFX), require us to affirm the district court's grant of summary judgment.
 
 BACKGROUND
 
 3
 While Jovanovich and LaPena were incarcerated at ESP, they obtained assignments in the prison law library as an inmate law librarian and an inmate law clerk, respectively.[1] They sought, and were granted, informal interviews for the positions with corrections officer Garcia, an ESP law library supervisor. They then appeared before a classification committee to be interviewed for the position. They were assigned to the law library positions and told to report to Officer Garcia.
 
 
 4
 Appellants worked approximately 18-21 hours each week during times when the ESP library was open to medium security inmates. Nevada Department of Prisons libraries, operated under the supervision of the institutional Associate Warden Programs, NDOP Admin. Reg. 722, use inmate law clerks to assist other inmates with legal research, to bring legal materials to segregation units, to assist in disciplinary hearings and to assist the prisons in pro se litigation. NDOP Admin. Reg. 724. Appellants were not paid the federal minimum wage of $4.25 per hour specified in the FLSA.
 
 
 5
 In December of 1992, appellants filed a complaint in district court alleging, inter alia, that NDOP's failure to pay appellants the minimum hourly wage for their work as law library clerks violated the FLSA.[2] In March of 1993, the State moved to stay the proceedings pending this court's en banc review of its opinion in Hale v. Arizona, 967 F.2d 1356 (9th Cir. 1992), rehearing granted (Sept. 16, 1992). In June of 1993, following the Hale en banc decision, the State moved for summary judgment and the district court entered an order granting that motion in December, 1993.
 
 
 6
 Appellants timely appealed the district court's judgment and this court entered an order for the appointment of pro bono counsel.
 
 DISCUSSION
 
 7
 Appellants first claim that because their law library services functioned to fulfill the state's constitutional obligation to provide prisoners meaningful access to the courts, see Bounds v. Smith, 430 U.S. 817, 828-29 (1977), the circumstances of their employment are distinguishable from other cases in which this court has characterized the inmate/prison work relationship as "penological, not pecuniary." Hale v. Arizona, 993 F.2d 1387, 1395 (9th Cir. 1994) (en banc); see also Morgan v. MacDonald, 41 F.3d 1291, 1293 (9th Cir. 1994). Appellants argue that if no qualified inmates had been available in the inmate population, the prison would have had to turn to the outside market in the general legal community and that therefore the State derived a pecuniary benefit from appellants' work.
 
 
 8
 This theory casts a very wide net. Any prisoner who works in a prison-implemented, in-prison job serving food, assisting with medical care, or staffing janitorial services arguably helps the State fulfill its constitutional duties vis-a-vis its inmates. That the State of Nevada, and the ESP, specifically, may need law clerks to fulfill their constitutional obligation to the State's inmates does not change the "economic reality" of appellants' work relationship with the prison.
 
 
 9
 Appellants attempt to distinguish their case from Hale, this court's en banc decision that held "that prisoners who work for programs structured by a prison pursuant to state law requiring hard labor are not 'employees' of the prison entitled to a minimum wage" under the FLSA. Hale, 993 F.2d at 1398. Appellants contend that the language of the Nevada statute governing inmate work, Nev. Rev. Stat. Sec. 209.461(1)(d),[3] is "significantly less compulsory" than the Arizona statute at issue in Hale.[4] This court recently rejected this very argument in Morgan v. MacDonald, 41 F.3d 1291 (9th Cir. 1994), a case that also involved an ESP inmate's FLSA challenge. Id. at 1293 (finding Nevada's statutory requirement "materially similar to the one we considered in Hale").[5]
 
 
 10
 Appellants urge this court to find the holding in Baker v. McNeil Island Corrections Ctr., 859 F.2d 124 (9th Cir. 1988) (reversing dismissal of prisoner's Title VII claim and concluding that he could be an "employee" of the prison for purposes of Title VII, where prisoner had applied for prison library aide position and was allegedly rejected on the basis of his race), controlling rather than Hale. Appellants have not alleged an inmate/prison work relationship significantly different from those addressed in Hale and Morgan to justify finding Baker controlling in this case. See Hale, 993 F.2d at 1393.
 
 
 11
 Lastly, appellants' argument that they meet the definition of "employees" under this court's four-factor test articulated in Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983), is without merit. This test is now defunct in the in-prison, prison-structured labor context. See Hale, 993 F.2d at 1394 (Bonnette factors "not a useful framework in the case of prisoners who work for a prison-structured program because they have to"); Morgan, 41 F.3d at 1293 (Bonnette factors "of no help ... in deciding ... whether the inmates are 'employed' in the relevant sense at all").
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Jovanovich's "Inmate Law Librarian" position description included the following "special conditions":
 Research and prepare for court filing the following for the GP inmates, Phase II: the federal and state habeas corpus forms, appeals (federal and state), interstate detainers, interstate compact requests, post-conviction release petitions, and simple civil matters (joint petition for divorce, etc.).
 LaPena's "Inmate Law Clerk" position description required the following general qualifications:
 (1) Has prior experience as a law clerk, or, has prior experience as a pro per litigant, or, has prior experience as a court appointed lay assistant. (2) Must be able to pass law clerk hiring tests. (3) Must be able to deal with all ethnic groups, as well as protective custody inmates.
 
 
 [2]
 The minimum wage claim is the only issue before this court on appeal
 
 
 [3]
 Nev.Rev.Stat. Sec. 209.461(1)(b) provides:
 The director [of the Nevada Department of Prisons] shall ... [t]o the extent practicable, require each offender, except those whose behavior is found by the director to preclude participation, to spend 40 hours each week in vocational training or employment, unless excused for a medical reason.
 Id. (emphasis added).
 
 
 [4]
 The applicable statute in Hale provided:
 The director has the authority to require that each able-bodied prisoner under commitment to the state department of corrections engage in hard labor for not less than forty hours per week, except that not more than twenty hours per week of participation in an educational, training or treatment program may be substituted for an equivalent number of hours of hard labor ....
 Ariz.Rev.Stat. Sec. 31-251(A).
 
 
 [5]
 Appellants point to other sections of Nevada statutory law, such as Nev. Rev. Stat. Sec. 209.461(1)(a), arguing that these statutes create an employment relationship. This argument is to no avail because federal law, not the state's characterization of the prisoner/prison work relationship, "controls [inmates'] status as employees under the FLSA." Hale, 993 F.2d at 1395